IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **DAMON A. WHITE,**<br><br>*Plaintiff,*<br><br>v.<br><br>**ISAAC HALL,** *et al.,*<br><br>*Defendants.* | **CIVIL ACTION NO.**<br>**5:18-cv-00072-TES** |

### ORDER

Before the Court is Defendants Isaac Hall ("Hall") and Oakley Trucking's ("Oakley") Motion to Exclude the Opinion Testimony of Sarah Lustig and Certain Opinion Testimony of Oliver Wood [Doc. 61].

### BACKGROUND

Plaintiff Damon White ("White") drives a truck for Wal-Mart. [White Depo., Doc. 61-2, p. 44:8–10]. In February 2017, White was not driving his Wal-Mart truck, but was instead driving his 2016 Chevrolet Corvette on Interstate 75 South. [Doc. 1-1, ¶¶ 6–7]. Hall was driving a tractor trailer when debris from Hall's truck struck the undercarriage of White's car causing an accident. [Doc. 1-1, ¶¶ 6–7]. White suffered a shoulder injury that required arthroscopic surgery in December 2017. [Doc. 61-1, p. 1]; [Doc. 66, p. 1]. In March 2018, following the surgery, White returned to work at Wal-

Mart. [*Id.* at p. 2]. White then initiated this personal injury action against Hall and Oakley. [Doc. 45].

White seeks to admit the testimony of Sarah Lustig, B.S.N., R.N., C.L.C.P., ("Lustig") as evidence of the future care needs and associated costs of White's shoulder injury. [Lustig Depo., Doc. 61-4, p. 31:6–10]; [Doc. 61-1, p. 2]. Lustig created a "life care plan" [Doc. 61-5] for White that itemizes various costs by category for both a "good" outcome, referred to as "Scenario 1,"or a "bad" outcome, referred to as "Scenario 2." To illustrate, the life care plan lists "Physical Therapy Evaluation Outpatient" as one category of future medical cost, and lists and totals each specific cost White will incur in this category. [*Id.* at p. 1]. Under Scenario 1, White would face this cost once or twice post-op. [*Id.*]. Under Scenario 2, White would incur this cost once a year for the rest of his life. [*Id.*]. There are nine such categories of costs listed in Lustig's life care plan.

White also seeks to admit the testimony of Dr. Oliver G. Wood, Jr., to calculate the present value of the amount of White's loss using inputs from Lustig's life care plan, calculations of future earnings capacity, family services, and 401(k) benefits. [Wood Depo., Doc. 61-6, p. 21:11–17, p. 44:8–12].

Defendants Hall and Oakley argue that the testimony of Lustig and Wood should be excluded from trial because it is imprecise, unspecific, and misleading. [Doc. 61-1, pp. 2, 7]. White counters that Lustig is qualified, and her opinions are reliable and

helpful to the jury. [Doc. 66, pp. 6–16]. White also argues that there is no basis under *Daubert* to exclude Wood's testimony. [*Id*. at 16–18].

## DISCUSSION

### A.  *Daubert* **Standard**

Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Rulings on the admissibility of expert testimony—like all evidentiary rulings—necessarily involve the exercise of the Court's discretion. *See Burchfield v. CSX Transp., Inc.*, 636 F.3d 1330, 1333 (11th Cir. 2011). Trial courts are to act as "gatekeepers" to ensure that speculative and unreliable opinions do not reach the jury. *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579, 589, n.7 (1993). "This gatekeeping role, however, is not intended to supplant the adversary system or the role of the jury: vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *United States v. Ala. Power Co.*, 730 F.3d 1278, 1282 (11th Cir. 2013). Expert testimony is admissible if "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his

conclusions is sufficiently reliable . . . ; and (3) the testimony assists the trier of fact . . . to understand the evidence or to determine a fact in issue." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting *City of Tuscaloosa v. Harcros Chems. Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). The "'burden of establishing qualification, reliability and helpfulness'" lies with the party offering the expert opinion. *McClain v. Metabolite lnt'l. Inc.*, 401 F.3d 1233, 1238 (11th Cir.2005) (quoting *Frazier*, 387 F.3d at 1260).

In assessing whether an expert's methodology is reliable, the Court generally should consider the following factors: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential error rate of the technique; and (4) whether the technique is generally accepted in the scientific community." *Adams v. Lab. Corp. of Am.*, 760 F.3d 1322, 1327 (11th Cir.2014) (per curiam). These factors, of course, represent a non-exhaustive list and "'do not constitute a definitive checklist or test.'" *Id*. (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)). "While those factors may help in assessing the reliability of scientific or experience-based expert testimony, the district court's 'gatekeeping inquiry must be tied to the facts of a particular case.'" *Id*. (quoting *Kumho Tire*, 526 U.S. at 150).

In its gatekeeping role, the Court's focus must be on the reliability of the testimony, not simply whether it fits within the narrow confines of lawyer-urged litmus tests. While "'each stage of the expert's testimony [must] be reliable, . . . each stage must

4

[also] be evaluated practically and flexibly without bright-line exclusionary (or inclusionary) rules.'" *Frazier*, 387 F.3d at 1262 (quoting *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir.1999)). The Court's goal is to ensure that an expert "'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Id*. at 1260 (quoting *Kumho Tire*, 526 U.S. at 152). "Sometimes the specific [traditional] *Daubert* factors will aid in determining reliability; sometimes other questions may be more useful." *Id*. at 1262. Testimony that the parties plan to present to a jury must be "'properly grounded, well-reasoned, and not speculative.'" *Id*. (quoting Fed. R. Evid. 702 advisory comm. note (2000 amends)).

Finally, the Court must assess whether the expert testimony helps the trier of fact. This factor turns on whether the expert testimony "concerns matters that are beyond the understanding of the average lay person." *Frazier*, 387 F.3d at 1262. "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id*. at 1262–63. "Nor does expert testimony help the trier of fact if it fails to 'fit' with the facts of the case." *Stoner v. Fye*, No. 5:15-cv-102 (CAR), 2017 WL 2434461, at *4 (M.D. Ga. June 5, 2017) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004)). "Expert testimony lacks 'fit' when 'a large analytical leap must be made between the facts and the opinion.'" *Id.* (quoting *McDowell*, 392 F.3d at 1299); *see also Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997). "A court may conclude that there is simply too great an analytical

5

gap between the data and the opinion proffered." *Joiner*, 522 U.S. at 146. "Thus, the court may exclude otherwise reliable testimony if it does not have 'sufficient bearing on the issue at hand to warrant a determination that it [is *helpful* to the trier of fact].' "*Fye*, 2017 WL 2434461, at *4 (quoting *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir. 2005)). "At all times when scrutinizing the reliability and relevance of expert testimony, a court must remain mindful of the delicate balance between its role as a gatekeeper and the jury's role as the ultimate fact-finder." *Id.*

### B. Motion to Exclude Lustig's Life Care Plan Testimony

At bottom, Hall and Oakley argue that Lustig's testimony should be excluded because her "life care plan offers no guidance as to the applicability of either Scenario 1 or Scenario 2." [Doc. 61-1, p. 4]. Further, the "drastic difference between [Scenario 1 and 2] coupled with Ms. Lustig's inability to state which scenario applies would confuse a jury rather than assist it in determining purported future care needs." [*Id*. at pp. 4–5]. Finally, Hall and Oakley argue that because White has no need for future medical treatment, both Scenario 1 and 2 are unreliable and unhelpful. [*Id*. at p. 7]. Hall and Oakley do not argue that Lustig is unqualified. Instead, their arguments are aimed at challenging the reliability and helpfulness of her testimony. *See Frazier*, 387 F.3d at 1260 (explaining the three requirements for admitting expert testimony: qualification of expert, reliable methodology, and helpfulness to trier of fact).

First, White has met his burden of showing that that the life care plan testimony is helpful to the trier of fact. Hall and Oakley's argument to the contrary misses the mark. They cite to portions of Lustig's deposition where, according to them, she is "unable" to state which scenario applies. [Doc. 61-1, p. 4]; [Lustig Depo., Doc. 61-4, pp. 80:18—81:14]. But the reason she was unable to do so at the time of the deposition was because she had not reviewed White's updated information in over two years. [Lustig Depo., Doc. 66-3, p. 75:19–22]. Lustig testified that she can provide an updated opinion on whether Scenario 1 or 2 most accurately applies if (when) she reviews updated information about White. [*Id.* at pp. 81:15—83:12 ("[B]ased on [White's] testimony and a follow-up interview, that's when I could answer your question" about whether Scenario 2 would weigh more heavily than Scenario 1.)]. After Lustig reviewed White's latest deposition and analyzed his updated "human response" to his medical diagnosis, she provided an updated opinion on whether Situation 1 or 2 would best guide the jury. [Lustig. Affid., Doc. 66-4, p. 8].

Critically, White doesn't want to simply introduce the life care plan and then let the jurors figure it out on their own. Instead, White intends to have Lustig testify as to which scenario applies based on her understanding of White's current medical status. [Lustig Depo., Doc. 66-3, pp. 75:19–22, 81:15—83:12]. In sum, the Court finds that Lustig's life care plan, coupled with her opinion about which of the scenario's plans is most accurate at the time of trial, could be helpful to the trier of fact.

Second, White met his burden of showing that Lustig used reliable methodology to generate White's life care plan. Defendants' only argument against reliability is that because White has "not treated or taken any medications for over two years," the very presentation of a life care plan is itself misleading and presumably inaccurate because, if the last two years are indicative of his medical condition, he doesn't need any life care at all. [Doc. 61-1, p. 4]. True, courts sometimes find expert testimony about life care plans unreliable (and thus excludable) when the proffered expert offers an opinion of future medical costs without explaining the factual basis for those opinions. *See, e.g., Rinker v. Carnival Corp.*, No. 09-23154-CIV, 2012 WL 37381, at *2 (S.D. Fla. Jan. 6, 2012) ("However, nothing in the report indicates where or how Dr. Lessne developed these numbers. At his deposition, Dr. Lessne admitted that he did not speak with Plaintiff's doctors or Plaintiff. He also admitted that all of the projected medical care and frequency estimates are simply his opinion."). But that is not the case here. Lustig generated the life care plan scenarios after she consulted with Dr. Lugo, White's treating orthopedic surgeon; reviewed White's medical records; and collaborated with White's health care team. [Lustig Affid., Doc. 66-4, ¶¶ 12–21]; [Lustig Depo., Doc. 66-3, p. 74:2–11 (Lustig confirmed that she didn't include any treatment listed in the life care plan that Dr. Lugo did not recommend)].

The Court concludes that Hall and Oakley's objections better relate "to the weight, and not the admissibility" of Lustig's testimony. *M.D.P. v. Middleton*, 925 F.

Supp.2d 1272, 1276 (M.D. Ala. Feb. 7, 2013) (finding that the expert's life care plan testimony was admissible). Therefore, Lustig "will be able to testify, and be subject to cross-examination, about [her] opinions in this case." *Id.*

    **C.**    <u>**Motion to Exclude Dr. Wood's Expert Testimony**</u>

Hall and Oakley seek to exclude Dr. Wood's testimony regarding (1) funding for Lustig's life care plan; and (2) White's after-trial loss in earning capacity. [Doc. 61-1, p. 7].[1] First, they argue that "[t]he viability of Dr. Wood's opinion testimony concerning the funding of Ms. Lustig's life care plan depend[s] *solely* on the legitimacy of [the] life care plan." [*Id.* at p. 8 (emphasis added)]. As discussed in Section B, *supra*, the Court will allow the jury to hear Lustig's life care plan testimony. Therefore, this objection fails. The Defendants may certainly point out their contentions in cross examination, but the jury may hear this portion of Dr. Wood's testimony. [Doc. 61-1, p. 8].

Second, Hall and Oakley argue that "Dr. Wood's opinion testimony about Plaintiff's after-trial loss in future earning capacity is imprecise, unspecific, and will not assist a jury." [Doc. 61-1, p. 8]. Hall and Oakley equate Dr. Wood's testimony to the expert in *McGinnis v. American Home Mortg. Servicing, Inc.*, No. 5:11-cv-284-CAR, 2013 WL 3338922, at *10 (M.D. Ga. July 2, 2013). [Doc. 61-1, p. 9]. There, the court excluded the opinion testimony because "Berry [the purported expert] roughly estimates the

---

[1] Hall and Oakley "do not seek to exclude Dr. Wood's opinion testimony concerning before-trial loss in earning capacity, relating to certain periods before his December 2017 surgery and during the few months after this surgery." [Doc. 61-1, p. 8].

9

accuracy of Homeward's analyses by referring generally to a 'ball park' figure, thus rendering an imprecise and unspecific opinion." *McGinnis*, No. 5:11-cv-284-CAR, 2013 WL 3338922, at *10. But, Dr. Wood doesn't use "ball park" figures. Instead, he reviewed White's annual income as shown on his tax returns and calculated the present value of that amount using a standard discount rate and expected future years of employment. [Wood Report, Doc. 61-7]; [Wood Depo., Doc. 61-6, p. 34:3–23]. Dr. Wood's report shows that if White loses 100% of his future income, the present value of that amount would be $956,443. [Doc. 61-7, p. 3].

But, Hall and Oakley take issue with the report's reference to a zero-to-100% range. [Doc. 61-1, p. 9]. The Court does not. The parties are free to argue about the applicable percentage of White's loss to future earnings capacity at trial. *See Hernandez v. Crown Equip. Corp.*, 92 F.Supp.3d 1325, 1354 (M.D. Ga. Mar. 11, 2015) ("Courts have recognized that, although the opposing party may use cross examination to challenge the factual basis for the economist's assumptions, the process of placing a present value on future expenses is nonetheless reliable and useful for the jury."). Accordingly, Wood "will be able to testify, and be subject to cross-examination, about [his] opinions in this case." *Middleton*, 925 F. Supp.2d at 1276.

## **CONCLUSION**

The Court exercises its discretion as "gatekeeper" to allow the jury to hear the testimony of Lustig and Wood. *Daubert*, 509 U.S. at 589, n.7 (1993). To rule otherwise

would "supplant the adversary system [and] the role of the jury." *Ala. Power Co.*, 730 F.3d at 1282. Therefore, the Court **DENIES** Hall and Oakley's Motion to Exclude the Opinion Testimony of Sarah Lustig and Certain Opinion Testimony of Oliver Wood [Doc. 61].

**SO ORDERED**, this 6th day of November, 2020.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**
